IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| ANITA BOND, | CV 24-59-M-KLD |
| Plaintiff, |  |
| vs. | ORDER |
| LIBERTY MUTUAL INSURANCE; RURAL DEVELOPMENT, U.S. DEPARTMENT OF AGRICULTURE and FIRST AMERICAN TITLE, |  |
| Defendants. |  |

This matter comes before Court on the following motions: (1) a motion by the United States, on behalf of Defendant Rural Development, U.S. Department of Agriculture ("USDA Rural Development"), to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) (Doc. 4); (2) a motion by Defendant First American Title[1] to dismiss for insufficient process pursuant to Rule 12(b)(4) (Doc. 21); and (3) a motion by Defendant Liberty Mutual Insurance Company to dismiss for insufficient service of process pursuant to Rule 12(b)(5) and for failure to state a claim for relief pursuant to Rule 12(b)(6) (Doc. 25).

---

[1] First American Title is now known as Flying S Title and Escrow of Montana, Inc. (Doc. 21). The Court will refer to this Defendant as "FSTE".

I.    **Background**[2]

Plaintiff Anita Bond, who is proceeding pro se, filed this action on April 8,

2024, in the Montana Fourth Judicial District Court, Missoula County. (Doc. 6).

Bond initiated her lawsuit by filing a "Petition for Summary Judgment" (Doc. 6)

and three "Motions for Summary Judgment" (Doc. 7 at 7-24) all of which the

Court liberally construes as a Complaint. On May 2, 2024, the United States timely

removed the case to this Court pursuant to 28 U.S.C. § 1442 on the ground that it is

a civil action against an agency of the United States for official conduct.

Taking the allegations against USDA Rural Development as true, on August

24, 2020, Bond closed on a loan from USDA Rural Development to refinance her

existing mortgage and repair her home. (Doc. 7 at 15). Also on August 24, 2020,

Bond entered a Construction Disbursement Agreement with USDA Rural

Development and FSTE. (Doc. 7 at 15; Doc. 5-1). The disbursement agreement

designated FSTE as the escrow holder responsible for disbursing funds in the

amount of $40,756.13 for payment of necessary construction costs and required

written approval by all parties prior to each disbursement. (Doc. 5-1 at 1).

On August 26, 2020—during the loan agreement's three-day rescission

period—USDA Rural Development and FSTE released $8,500 to contractor Mike

---

[2] The following facts are taken from the pleadings and other documents that are
properly considered under the Rule 12(b) legal standards outlined below.

McDanal without Bond's written approval. (Doc. 7 at 15). McDanal was working on another project at the time, and Bond alleges that "the money should have gone to" a different contractor selected by Rural Development, Justin Crandall. (Doc. 7 at 15). Crandall later caused "severe structural damage" to Bond's home. (Doc. 7 at 15). In the fall of 2021, USDA Rural Development advised Bond "that they would not see the remodel project to completion," and the remodel of Bond's home still is not complete. (Doc. 7 at 15).

Bond alleges USDA Rural Development breached the loan agreement by failing to see the remodel project to completion and cancelling the contract. (Doc. 7 at 15). Bond further alleges that USDA Rural Development breached the terms of the disbursement agreement by releasing $8,500 to McDanal prematurely and without Bond's written approval. (Doc. 7 at 15). Bond claims that USDA Rural Development "breached said contract due to negligence by their contractors, by the loss of remodel funds by Mike McDanal and severe structural damage to the remodel done by Justin Crandall." (Doc. 7 at 15).

In her "Motion for Summary Judgment" against FSTE, Bond similarly alleges that FSTE also violated the disbursement agreement by releasing funds from her "escrow account and issuing a post-dated check to Rural Development's contractor Mike McDanal" without Bond's authorization during the loan agreement's three-day rescission period." (Doc. 7 at 20).

Finally, in her "Motion for Summary Judgment" against Liberty Mutual, Bond alleges that Justin Crandall, doing business as Mud Man, is insured by Liberty Mutual. (Doc. 7 at 9). Bond asserts that Crandall was hired by USDA Rural Development to remodel her home, but he was "unreliable and not professional in his trade." (Doc. 7 at 9). Bond claims Crandall "has made the house unlivable and unsafe due to his vandalism and lack of funding to complete the remodel." (Doc. 7 at 9). Bond asks the Court to enter an order to "help in settling the claim against Liberty Mutual Insurance, who's insured Justin Crandall caused severe structural damage" to Bond's property while performing remodel work. (Doc. 7 at 7).

The United States moves to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) on the ground that it has not waived its sovereign immunity. FSTE moves to dismiss for insufficient process pursuant to Rule 12(b)(4) based on Bond's failure to comply with applicable service requirements, and Liberty Mutual similarly moves to dismiss for insufficient service of process pursuant to Rule 12(b)(5). Liberty Mutual also moves to dismiss for failure to state a claim for relief pursuant to Rule 12(b)(6).

## II.    Legal Standards

### A.    Rule 12(b)(1) and (6)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the claims asserted. "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Rattlesnake Coalition v. United States Environmental Protection Agency*, 509 F.3d 1095, 1102 n. 1 (9th Cir. 2007).

A defendant may pursue a Rule 12(b)(1) motion to dismiss for lack of jurisdiction either as a facial challenge to the allegations of a pleading, or as a substantive challenge to the facts underlying the allegations. *Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). A facial challenge to the jurisdictional allegations is one which contends that the allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The success of a facial challenge to jurisdiction depends on the allegations in the complaint, and does not involve the resolution of a factual dispute. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.

Here, the United States argues that Bond has not alleged facts establishing a waiver of sovereign immunity, which raises a facial challenge to subject matter jurisdiction. When considering a facial challenge, the court applies the same

standard that applies to motions to dismiss under Rule 12(b)(6) and takes the allegations in the complaint as true, draws all reasonable inferences in the plaintiff's favor, and determines whether the allegations are sufficient to invoke the court's jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In addition to reviewing the allegations in the complaint, the court may also consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the [document's] authenticity." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

Where, as here, the plaintiff is proceeding pro se, the court has an obligation "to construe the pleadings liberally and to afford the [plaintiff] the benefit of any doubt." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). But even where the plaintiff is proceeding pro se, the complaint should be dismissed if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim." *See Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1997). A pro se plaintiff must be given leave to amend unless it is "absolutely clear that the deficiencies of the complaint cannot be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007).

### B.    Rule 12(b)(4) and (5)

A federal court does not have jurisdiction over a defendant unless the

defendant has been served properly under Rule 4 of the Federal Rules of Civil

Procedure. *Direct Mail Specialists v. Eclat Computerized Techs., Inc.*, 840 F.2d

685, 688 (9th Cir. 1988). Once service is challenged, the plaintiff bears the burden

of establishing that service was valid under Rule 4. *Brockmeyer v. May*, 383 F.3d

798, 801 (9th Cir. 2004). The court may consider evidence outside the pleadings in

resolving a motion challenging process pursuant or a Rule 12(b)(4) or service of

process pursuant to Rule 12(b)(5). *See e.g Clancy v. Allstate Ins. Co.*, 2021 WL

3861421, at *1 (N.D. Cal. Aug. 30, 2021); *Ballon v. Law Offices of Robin W. Enos*,

2006 WL 8455278, at *1 n. 2 (S.D. Cal. Dec. 6, 2006).

   Although Rule 12(b)(4) and Rule 12(b)(5) motions are closely related, they

"challenge distinctly different elements of process." *Ballon*, 2006 WL 8455278, at

*1 (citation omitted). A Rule 12(b)(4) motion asserts "a defect in the form of the

summons itself resulting from noncompliance with Rule 4(b)," while a Rule

12(b)(5) motion challenges the "method through which defendants are served with

the summons, as non-compliant with Rule 4(d)-(m)." *Clancy*, 2021 WL 3861421 at

*1-2. While most defects in the form of a summons—such as a misspelling of a

defendant's name—are technical and do not result in prejudice to the defendant, a

plaintiff's failure to serve the defendant with a signed and sealed summons is

grounds for dismissal. *Clancy*, 2021 WL 3861421, at *1 (citations omitted).

   When the method of service of process is non-compliant, the court has

discretion to dismiss the action or quash service. *Clancy*, 2021 WL 3861421, at *1. *See also Patel-Julson v. Paul Smith Las Vegas, Inc.*, 2013 WL 1752897, at *2 (D. Nev. Apr. 23, 2013).

## III.    <u>Discussion</u>

### A.    **The United States' Rule 12(b)(1) Motion to Dismiss**

The United States argues the Court lacks subject matter jurisdiction because it has not waived sovereign immunity for Bond's breach of contract claims against USDA Rural Development. It is well-settled that the United States and its agencies cannot be sued in federal court unless Congress has expressly waived sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1117 (9th Cir. 2003). The party asserting a claim against the federal government or its agencies has the burden of "demonstrating an unequivocal waiver of immunity." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 924 (9th Cir. 2009) (quoting *Cunningham v. United States*, 786 F.2d 1445, 1446 (9th Cir. 1986)). Absent a clear waiver of sovereign immunity, a federal court is without subject matter jurisdiction and dismissal is required. *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir. 1982).

The Tucker Act, 28 U.S.C. § 1491(a)(1), and the Little Tucker Act, 28 U.S.C. § 1346(a)(2), provide a statutory waiver of sovereign immunity for certain contract claims against the United States or its agencies. *Maguire v. United States*,

550 F.3d 903, 910-11 (9th Cir. 2008); 28 U.S.C. § 1491(a)(1) ("The United States

Court of Federal Claims shall have jurisdiction to render judgment upon any claim

against the United States founded … upon any express or implied contract with the

United States …."); 28 U.S.C. § 1346(a)(2) ("The district courts shall have original

jurisdiction, concurrent with the United States Court of Federal Claims, of …[a]ny

…civil action … against the United States, not exceeding $10,000 in amount,

founded … upon any express or implied contract with the United States …."). 

Read together, the Tucker Act and the Little Tucker Act "provide for jurisdiction

solely in the Court of Federal Claims for claims seeking more than $10,000 in

damages, and concurrent jurisdiction over claims seeking $10,000 or less." *Tritz v.*

*United States Postal Serv.*, 721 F.3d 1133, 1137 (9th Cir. 2013). *See also McGuire,*

550 F.3d at 910-11.

Taking the allegations in the Complaint as true, Bond's claims against

USDA Rural Development sound in contract. Bond expressly alleges that USDA

Rural Development "breached" the terms of the loan agreement and

Disbursement Agreement by releasing $8,500 to McDanal prematurely and

without her written approval, and by failing to see the remodel project to

completion. (Doc. 7 at 15). Bond additionally alleges that USDA Rural

Development "breached" these contracts "due to negligence by their contractors,

by the loss of remodel funds by McDanal and severe structural damage to the

remodel done by Justin Crandall." (Doc. 7 at 15). These allegations also sound in contract because they are premised on USDA Rural Development's alleged failure to comply with its contractual duties, and there would be no basis for any tort claim but for two government contracts at issue. *See Farrell v. United States*, 2012 WL 12883962, at *3 (D. Idaho Dec. 11, 2012) (finding tort claims for negligence and negligent infliction of emotional distress were, in substance, contract claims for purposes of the Tucker Act because they were premised on Rural Housing Service's alleged mishandling of a construction loan contract—including the approval of an unqualified builder and the failure to advance funds to complete construction—and the tort claims would not have existed but for the government contract).

As the party attempting to invoke the subject matter jurisdiction of the district court, Bond bears the burden of establishing that her claims do not exceed the $10,000 jurisdictional limit established by the Little Tucker Act. *Marker v. Dep't of Interior, Bureau of Land Mgmt.*, 2022 WL 376328, at *7 (D.N.M. Feb. 8, 2022). Although Bond does not plead a specific amount of damages, it is clear based on the allegations in the Complaint that she is seeking more than $10,000 in damages. Bond alleges $8,500 was prematurely paid out of escrow without her authorization and that she has "lost" that money. (Doc. 17 at 15). She claims USDA Rural Development's premature payment to the contractor who was

supposed to work on her home ultimately resulted in "severe structural damage" to her home and "an unfinished remodel." (Doc 17 at 13-15). Taking these allegations as true, Bond's monetary damages would no doubt exceed $10,000. Consistent with her pleading, Bond confirms in briefing that her claimed damages "clearly exceed $10,000" and amount to $600,000. (Doc. 16 at 2, 4).

Because Bond's claims sound in contract and seek more than $10,000 in damages, they fall within the exclusive jurisdiction of the Court of Federal Claims. Bond's arguments to the contrary are without merit. In her response brief, Bond refers to the Federal Tort Claims Act (FTCA), which "effects a limited waiver of sovereign immunity to allow certain common law tort claims [to] proceed against the United States." *Tritz,* 721 F.3d at 1140 (citation omitted). (Doc. 16 at 2). The FTCA does not waive the government's sovereign immunity for breach of contract claims. *See e.g. Lexington Ins. Co. v. United* States, 465 F.Supp.3d 1158, 1164 (W.D. Wash. 2020). The waiver also does not apply to several classes of intentional torts, including claims arising out of "misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h).

Bond contends USDA Rural Development coerced her into agreeing to the agency's preferred contractors and forged her signature on the disbursement agreement releasing funds to McDanal. (Doc. 16 at 6). Even reading these arguments liberally, any potential tort claims based on such conduct would fall

within the scope of FTCA's exception for claims arising out of deceit, misrepresentation, and interference with contractual rights. *See e.g. Baptichon v. U.S. Department of Education*, 2023 WL 2561807, at *3-4 (D.D.C. March 17, 2023) (concluding that FTCA's misrepresentation exception applied to plaintiff's forgery claim). To the extent Bond's response brief can be liberally construed as asserting intentional tort claims, the United States has not waived its sovereign immunity under the FTCA.[3]

In an apparent attempt to circumvent the FTCA's intentional tort exception, Bond filed a surreply in which she recasts her arguments in terms of negligence. She asserts USDA Rural Development was negligent in hiring McDanal and Crandall, and negligently "fail[ed] to assure completion of the remodel and a safe dwelling." (Doc. 18 at 7, 9-10). The United States has moved to strike Bond's surreply on the ground that she filed the brief without seeking leave of court as required under Local Rule 7.1(d)(1)(D). (Doc. 19). The motion is well-taken, but

---

[3] Bond also refers in her response brief to unspecified "violations of federal regulations," but does not identify any specific regulation or explain how USDA Rural Development has violated any federal regulations. (Doc. 16 at 2). Additionally, the Tucker Act provides that "[t]he United States Court of Federal Claim shall have jurisdiction to render judgment upon any claim against the United States founded … upon … any regulation of an executive department …." 28 U.S.C. § 1491(a)(1). Bond's vague assertions do not state a claim for relief based on a regulatory violation, and even if they did, the Court of Federal Claims would have exclusive jurisdiction barring a waiver of sovereign immunity from some other statute. *Tritz*, 721 F.3d at 1137.

12

even considering the arguments Bond makes in surreply, the result here is the same. The alleged obligations that Bond argues USDA Rural Development violated all arose out of contract. Any claims based on USDA Rural Development's alleged breach of its contractual obligations do not fall within the limited waiver of sovereign immunity provided by the FTCA.

Even if Bond had an actionable tort claim to allege, the United States argues she has not exhausted her administrative remedies as required by the FTCA. Before filing an FTCA suit in federal court, a plaintiff must first present an administrative claim to the appropriate federal agency. 28 U.S.C. § 2675(a). As a general rule, the FTCA's exhaustion requirement is jurisdictional and cannot be waived. *Meridian Intern. Logistics, Inc. v. United States*, 939 F.2d 740, 743 (9th Cir. 1991). The plaintiff bears the burden of establishing subject matter jurisdiction under the FTCA, including by demonstrating that the claim was properly presented to the appropriate federal agency. *See Munns v. Kerry*, 782 F.3d 402, 413 (9th Cir. 2015).

Here, Bond does not allege anywhere in her Complaint that she has exhausted her administrative remedies. The USDA National Appeals Division (NAD) provides for administrative review of adverse decisions taken by USDA Rural Development. *See* 7 C.F.R. § 3550.4. Although Bond asserts in her response brief that she did not know about NAD, she does not claim to have filed an appeal.

13

Bond has not met her burden of demonstrating that a claim was properly presented to the appropriate federal agency as required to establish subject matter jurisdiction under the FTCA. *See Munns*, 782 F.3d at 413 ("The plaintiffs have not alleged or provided evidence that they have exhausted their administrative remedies under the FTCA, so they cannot rely on that statute's waive of sovereign immunity for jurisdiction.").

To the extent Bond argues the United States waived its sovereign immunity by appearing through counsel and removing this case to federal court, she is mistaken. (Doc. 16 at 2). *See e.g. Fenix Constructors, Inc. v. Jackson*, 2009 WL 763558, at *11 n. 10 (N.D. Okla. Mar. 19, 2009) (rejecting the argument "that it is 'inconsistent' for the United States to remove [a] case to federal court and then assert the doctrine of sovereign immunity" because government attorneys do not have the power to waive United States' sovereign immunity); *U.S. Murdock Mach. And Engineering Co. of Utah*, 81 F.3d 922, 931 (10th Cir. 1996).

In sum, the Court concludes for the reasons outlined above that the Tucker Act and Little Tucker Act bar this Court from exercising jurisdiction over Bond's claims against USDA Rural Development. Bond has not identified any other waiver of sovereign immunity that would apply, and her claims against USDA Rural Development are properly dismissed for lack of subject matter jurisdiction without prejudice to refiling in the Court of Federal Claims. *See e.g. Maenza v.*

14

*United States Postal Service*, 2023 WL 7928227, at *1 (D. Or. Oct. 17, 2023) (dismissing contract claims without prejudice for lack of subject matter jurisdiction under the Tucker Act); *Anniversary Mining Claims, LLC v. United States*, 2021 WL 2188483, at *2-3 (D. Nev. May 28, 2021) (dismissing claims under the Tucker Act without prejudice to refiling the claims in the Court of Federal claims); *United States v. Barron Collier* Company, 2014 WL 12672641, at *8 (D. Ariz. Sept. 15, 2014) (same).

**B.    FSTE's Rule 12(b)(4) Motion to Dismiss**

FSTE moves to dismiss for insufficient process pursuant to Rule 12(b)(4) on the ground that Bond's attempt at service while this case was pending in state court did not comply with Rule 4 of the Montana Rules of Civil Procedure.[4]

"When a case is removed from state court to federal court, the question of whether service of process was sufficient prior to removal is governed by state law." *Whidbee v. Pierce County*, 857 F.3d 1019, 1023 (9th Cir. 2017). Under Montana law, a "corporation, partnership, or other unincorporated association, whether domestic or foreign" may not be served by mail. Mont. R. Civ. 4(d)(3)(B)(iii). Rule 4(i) of the Montana Rules of Civil Procedure provides the following methods for effecting service on a corporation:

(A) delivering a copy of the summons and complaint to: (i) an officer; (ii) a

_____

[4] To the extent FSTE challenges service of process, the Court construes its motion as one asserted under Rule 12(b)(5).

director; (iii) a manager; (iv) a member of a member-managed limited liability company; (v) a superintendent; (vi) a managing agent; (vii) a general agent; or (viii) a partner;

(B) leaving copies of the summons and complaint at the office or place of business within Montana with the person in charge of such office;

(C) delivering a copy of the summons and complaint to the registered agent named on the records of the secretary of state;

(D) delivering a copy of the summons and complaint to any other agent or attorney in fact authorized by appointment or by statute to receive or accept service on behalf of the business or nonprofit entity, provided that if the agent or attorney in fact is designated by statute to receive service, further notice as required by the statute must also be given; or

(E) if the suit is against a business or nonprofit entity who charter or right to do business in Montana has expired or been forfeited, by delivering a copy of the summons and complaint to its trustees or stockholders or members.

Mont. R. Civ. P. 4(i)(3)(A)-(E). All methods of service provided for in Mont. R. Civ. P. 4(i) require the plaintiff to serve the summons and complaint together.

In support of its motion, FSTE has provided an affidavit from its vice president and manager, Dee Dee Blaney. (Doc. 23 at 2). Blaney's affidavit addresses Bond's attempt to serve FSTE by mail and in person. As to service by mail, Blaney states that "[o]n April 9, 2024, I received in the mail documents attached hereto as Exhibit 'B.' No notice of a lawsuit and request to acknowledge and waive service was included in the documents received by mail." (Doc. 23 at 2 ¶ 3). Exhibit B to Blaney's affidavit includes: (1) Bond's "Petition for Summary Judgment" and "Motion for Summary Judgment" against FSTE, which the Court

has liberally construed as the Complaint; (2) a Certificate of Service of stating that on April 8, 2024, she served the " Summary Judgment and Motion for Summary Judgment" on FSTE by mail; (3) a Summons with FSTE identified as the respondent; and (4) a Notice to the Court referring to an attached letter authorizing "Curtis Kruse, a layman" to represent her in the proceedings. (Doc. 23-2).

Although these materials included both a summons and the complaint, Montana law does not permit service by mail on a corporation like FSTE. *Nolan v. RiverStone Health* Care, 391 P.3d 95, 97 (Mont. 2017), citing Mont. R. Civ. P. 4(d)(3)(B)(iii)). "[S]trict compliance with the rules for service is mandatory," and actual "knowledge of the action is not a substitute for valid service" under Montana law. *Nolan*, 391 P.3d at 100 (citations omitted). Bond's attempt to serve FSTE by mail was therefore ineffective under Montana law.

As to service in person, Blaney states that "[o]n April 17, 2024, I received a visit from the Sheriff of Lake County, Montana, who delivered the documents attached as 'Exhibit A' to my office. The attached documents do not contain a Summons to appear in Missoula County court." (Doc. 23 at 2 ¶ 2). Consistent with Blaney's statement, the first exhibit attached to her affidavit includes: (1) Bond's "Petition for Summary Judgment" and "Motion for Summary Judgment" against FSTE which the Court has liberally construed as the Complaint; (2) a Certificate of Service of stating that on April 8, 2024, she served the "Petition, Summary

Judgment, Certificate of Service, Court Order – letter of representation" on FSTE by mail; and (3) a Notice to the Court referring to an attached letter authorizing "Curtis Kruse, a layman" to represent her in the proceedings. (Doc. 23-1).

Blaney's affidavit and supporting exhibits demonstrate that the materials served on FSTE did not include a summons. Although Bond asserts in response to FSTE's motion that she did serve a summons with the complaint and that Blaney's affidavit confirms as much, she is mistaken. Bond evidently included a summons in the materials she mailed to FSTE, but she did not include that summons in the materials she later served personally on FSTE. Because there is no evidence that Bond personally served FSTE with both a summons and complaint, service was defective.

In "all cases removed from any State court to any district court of the United States, a plaintiff may serve process upon removal if service of process was defective or was not attempted before removal." *Whidbee*, 857 F.3d at 1023. Consistent with Montana law, all methods of service described in Rule 4 of the Federal Rules of Civil Procedure requires that "[a] summons must be served with a copy of the complaint." Fed. R. Civ. P. 4(c)(1). Fed. R. Civ. P. 4(m) requires that a plaintiff serve a complaint and summons "within 90 days after the complaint is filed." When a case is removed from state court, the "period to serve process runs from the date of removal to federal court, rather than the date the action was filed

in state court." *Wickersham v. Washington*, 2014 WL 3846094, at *2 (W.D. Wash. Aug. 5, 2014); *see also Camper v. City of Los Angeles*, 2024 WL 445117 (C.D. Cal. Sept. 4, 2024) (the 90-day clock for service begins to run on the date of removal) (citing *Vasquez v. N. Cnty. Transit Dist.*, 292 F.3d 1049, 1053 (9th Cir. 2002); *Brown v. State of California*, 2023 WL 5961659, at *23 n.31 (citing several cases including *Whidbee* for the proposition that the 90-day period to serve process runs from the date of removal to federal court, rather than the date the action was filed in state court).

The United States removed this case from state court on May 2, 2024—approximately three weeks after Bond's ineffective attempt to serve FSTE in person. Taking May 2, 2024, as the start of Rule 4(m)'s service period, Bond would have had until July 31, 2024, to effect service on FSTE in accordance with Rule 4 of the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 4(d)(1) allows a plaintiff to notify a "defendant that an action has been commenced and request that the defendant waive service of a summons," and lists the requirements that such a notice and request must meet. Fed. R. Civ. P. 4(d)(1)(A)-(G).  Unless federal law provides otherwise or the defendant's waiver has been filed, a corporation in a judicial district of the United States must be served either by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or any

otherwise authorized agent, Fed. R. Civ P. 4(h)(1)(B), or using one of the methods of service permitted by Montana law, Fed. R. Civ. P. 4(e)(1), (h)(1)(A).

As of the date of this order, Bond has not provided evidence establishing that she has delivered a copy of the summons and complaint to an authorized agent of FSTE and, as discussed above, Bond has not shown that she has completed service on FSTE as allowed by Montana law. In light of Bond's pro se status, however, the Court finds that the appropriate remedy is to quash service rather than to dismiss all claims against FSTE. The Court will provide Bond an additional 45 days to properly effect service on FSTE in accordance with Rule 4 of the Federal Rules of Civil Procedure.

### C.    Liberty Mutual's Rule 12(b)(5) and Rule 12(b)(6) Motion to Dismiss

Liberty Mutual moves to dismiss for insufficient service of process pursuant to Rule 12(b)(5) on the ground that Bond did not serve it with the complaint and a summons while this case was pending in state court or after removal. Liberty Mutual also moves to dismiss for failure to state a claim for relief pursuant to Rule 12(b)(6).

As explained above, whether Liberty Mutual was properly served prior to removal is governed by state law. *Whidbee*, 857 F.3d at 1023. Montana Code Annotated § 33-1-605 provides the process for serving a foreign insurer. The

statute requires an insurance company to designate an agent capable of accepting

service in the state and provides in relevant part:

> (4)    Service by certified mail to a registered agent listed for an insurer
>        constitutes service of legal process upon that insurer.
>
> …
>
> (7)    This section does not limit or affect the right to serve any process,
>        notice, or demand upon an insurer in any other manner permitted by
>        law.

Mont. Code Ann. § 33-1-605. Under this statute, a plaintiff may perfect service of

legal process on a foreign insurer by sending the complaint and a summons via

certified mail to the insurer's registered agent or "in any other manner" permitted

under Mont. R. Civ. P. 4(i).

On May 16, 2024, Bond filed "Proof of Service" as to Liberty Mutual. (Doc.

13). Bond's submission reflects that she sent a certified mailing to the following

address: "Liberty Mutual Insurance PO Box 514 Scranton, PA 18505-5014." (Doc.

13). The section to be completed on delivery shows a stamp of the name "Jessica

Yachwak," but the form is not dated or signed by a recipient. It is also not clear

what documents Bond included in her certified mailing. Bond also filed a

document titled "Sheriff's Return – Not Found" indicating that she attempted to

have Liberty Mutual personally served by the Sheriff in Pennsylvania at the

address "19 Bert Collins Drive PO Box 5014 Throop, PA." (Doc. 13). The

Sheriff's return indicates that "no such business is located at address ..." and is undated. (Doc. 13).

These documents are insufficient to establish service on Liberty Mutual. Bond's certified mail receipt does not use the publicly available mailing address or information for Liberty Mutual's registered agent in Montana.[5]  In her response, Bond explains that she sent her certified mailing to the address "which customarily receives correspondence" from her, and argues claims adjuster "Charles Bouton…is arguably the best person to receive service because he is most familiar with the claim…" (Doc. 29 at 2). But Bouton is not the registered agent who is permitted by law to accept service on behalf of Liberty Mutual. The certified mail receipt also does not indicate whether Bond included the complaint and a summons in her certified mailing, and the section to be completed on delivery bears only an undated signature stamp. (Doc. 13). Bond has therefore failed to establish service of the complaint and a summons via certified mail to Liberty Mutual's registered agent as permitted under Mont. Code Ann. § 33-1-605(4), and there is no evidence that she served Liberty Mutual "in any other manner" permitted under Mont. R. Civ. P. 4(i). Additionally, there is no evidence that Bond effected service on

---

[5]  *See e.g.* https://sbs.naic.org/solar-external-lookup/lookup/company/summary/29178011?jurisdiction=MT (last visited on January 14, 2025).

Liberty Mutual at any time after removal in accordance with Rule 4 of the Federal Rules of Civil Procedure.

In her response, Bond requests additional time to perfect service if the Court concludes Liberty Mutual has not been properly served. (Doc. 29). Given her pro se status, the Court would ordinarily give Bond another opportunity to effect proper service. But because Liberty Mutual's motion to dismiss for failure to state a claim is well-taken, giving Bond additional time to perfect service would be futile.

Bond's "Motion for Summary" against Liberty Mutual asks the Court to enter an order to "help in settling the claim against Liberty Mutual Insurance, who's insured Justin Crandall caused severe structural damage" to Bond's property. (Doc. 7 at 7). Liberty Mutual asserts that it is not an underwriting company and because it did not issue the policy issued to Crandall doing business as Mud Man, any claim Bond has against Mud Man should be made against the insurance company who issued the policy to Mud Man—not against Liberty Mutual. (Doc. 31 at 6).

But even assuming for present purposes only that Liberty Mutual is the underwriting company, it correctly argues that under Montana law Bond must obtain a settlement or judgment against Mud Man before bringing a third-party claim against Mud Man's insurer. (Doc. 31 at 6). Montana Code Annotated § 33-

18-242(7)(b) provides that "[a] third-party claimant may not file an action under this section until after the underlying claim has been settled or judgment entered in favor of the claimant on the underlying claim."

Taking Bond's allegations as true, she is a third-party claimant who is attempting to assert a claim against Mud Man for defective work. But because Bond does not allege she has obtained a settlement or judgment against Mud Man, any potential third-party bad faith claim against Mud-Man's insure is premature and cannot be brought at this time.[6] Because Bond fails to state a claim for relief against Liberty Mutual, granting her additional time to perfect service on Liberty Mutual would be futile. Accordingly, Bond's claims against Liberty Mutual are properly dismissed without prejudice for insufficient service of process pursuant to Rule 12(b)(5) and for failure to state a claim pursuant to Rule 12(b)(6).

## IV.    Conclusion

For the reasons discussed above,

**IT IS ORDERED** that:

(1) the United States' Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) (Doc. 4) is **GRANTED**. Bond's claims

---

[6] Bond has filed an improper surreply to Liberty Mutual's motion without seeking leave of court as required under Local Rule 7.1(d)(1)(D). (Doc. 33). But even considering the surreply, the outcome here is the same.

against USDA Rural Development are dismissed without prejudice to refiling in the Court of Federal Claims;

(2) FSTE's Motion to Dismiss for insufficient process pursuant to Rule 12(b)(4) (Doc. 21) is **GRANTED** to the extent is seeks to quash service but **DENIED** to the extent it seeks dismissal. <u>Bond shall have until **March 17, 2025**, to file proof that FSTE has been served with a summons and the complaint in accordance with Rule 4 of the Federal Rules of Civil Procedure. Bond is advised that if she does not provide proof of service by **March 17, 2025**, her claims against FSTE may be dismissed without prejudice for failure to comply with 4(m) and for failure to prosecute pursuant Rule 41(b) of the Federal Rules of Civil Procedure.</u>

(3) Liberty Mutual's Motion to Dismiss for insufficient service of process pursuant to Rule 12(b)(5) and for failure to state a claim pursuant to Rule 12(b)(6) is **GRANTED**. Bond's claims against Liberty Mutual are dismissed without prejudice.

DATED this 30th day of January, 2025.

_____
Kathleen L. DeSoto
United States Magistrate Judge